**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF INDIANA**
**FORT WAYNE DIVISION**

| | | |
|---|---|---|
| TRENT L. CHAPIN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Cause Number: 1:06-CV-34 TS |
| | ) | |
| MID-STATE MOTORS, INC., | ) | |
| d/b/a Fort Wayne Acura/Subaru, and | ) | |
| FORT-ROHR MOTORS, INC., | ) | |
| d/b/a Fort Wayne Toyota/Lexus, | ) | |
| | ) | |
| Defendants. | ) | |

**OPINION AND ORDER**

The parties had a jury trial on the Plaintiff's claims that the Defendants violated his rights secured by Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq*., as amended. The Plaintiff claimed that his former employer, Defendant Fort Wayne Acura/Subaru, fired him because he was a white Christian, and that his new employer, Defendant Fort Wayne Toyota/Lexus, retaliated against him once he complained about it to the EEOC.

At the conclusion of evidence, the Defendants moved for judgment as a matter of law pursuant to Federal Rule of Civil Procedure 50. At that time, the Court took the motion under advisement. The Jury found for Defendant Fort Wayne Acura/Subaru but against Defendant Fort Wayne Toyota/Lexus. The Jury awarded the Plaintiff $100,000 in compensatory damages and $1,000,000 in punitive damages. After the verdict, Defendant Fort Wayne Toyota/Lexus renewed its motion, and the Court allowed the parties to brief their positions.

**A.      Standard for Rule 50 Motions**

A judgment as a matter of law is granted when "a party has been fully heard on an issue and there is no legally sufficient evidentiary basis for a reasonable jury to find for that party on that issue." Fed. R. Civ. P. 50(a). "[T]he standard for granting summary judgment 'mirrors' the standard for judgment as a matter of law, such that 'the inquiry under each is the same.'" *Reeves v. Sanderson Plumbing Prods., Inc.,* 530 U.S. 133, 149 (2000) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250–51 (1986)).

In viewing the facts presented on a motion for summary judgment, a court must construe all facts in a light most favorable to the non-moving party and draw all legitimate inferences and resolve all doubts in favor of that party. *NLFC, Inc. v. Devcom Mid-Am., Inc.*, 45 F.3d 231, 234 (7th Cir. 1995); *Doe v. R.R. Donnelley & Sons Co.*, 42 F.3d 439, 443 (7th Cir. 1994); *Beraha v. Baxter Health Care Corp.*, 956 F.2d 1436, 1440 (7th Cir. 1992). A court's role is not to evaluate the weight of the evidence, to judge the credibility of witnesses, or to determine the truth of the matter, but instead to determine whether there is a genuine issue of triable fact. *Anderson*, 477 U.S. at 249–50; *Doe*, 42 F.3d at 443. Finally, a court is not to overturn a jury verdict lightly.

**B.     Trial Evidence**

The Plaintiff was employed by Fort Wayne Acura/Subaru car dealership as a Sales Manager. During his employment, a new General Manager was assigned to the dealership. The new manager was a Pakistani and a Muslim. Under his directive, the Plaintiff was discharged and replaced with another person from Pakistan, who also was a Muslim. Fort Wayne Acura/Subaru maintained that it discharged the Plaintiff because his work performance was weak.

2

After losing his job at Fort Wayne Acura/Subaru, the Plaintiff found employment at Fort

Wayne Toyota/Lexus.[1] While working there, the Plaintiff filed a discrimination charge with the

EEOC against Fort Wayne Acura/Subaru. The General Manager of Fort Wayne Toyota/Lexus,

Larry Kruse, learned of the charge on Friday, February 25, 2005. The following Monday,

February 28, Kruse called the Plaintiff into his office to speak with him. The Plaintiff secretly

tape-recorded their conversation:

| | |
|---|---|
| Kruse: | I need to ask you, what is your mentality in filing the EEOC claim against Bob Rohrman? |
| Chapin: | What do you mean? |
| Kruse: | What do I mean? |
| Chapin: | It is actually against Nadeem, is that correct? |
| Kruse: | Who does Nadeem work for? |
| Chapin: | Rohrman. |
| Kruse: | Who do you work for? |
| Chapin: | Rohrman. |
| Kruse: | What the hell is your mentality? Did you have a brain fart or what? |
| Chapin: | I suppose. I didn't think that — |
| Kruse: | Do you want to work here? |
| Chapin: | Yes, I do. |
| Kruse: | If I wanted to work here on the floor, I wouldn't file suit against him. |
| Chapin: | I think that I was misfairly treated down there. |
| Kruse: | It had nothing to do—He brought his own people in. It had nothing to do with anything with you. If you want to file a claim, you need to work somewhere else, because your are not performing here. I can let you go for non-performance. |
| Chapin: | No, I want to work here. |
| Kruse: | Then you need to fucking reverse the claim right away, and it needs to be done today. |
| Chapin: | Okay. I have to go down there. |
| Mr. Kruse: | Go do it right now. You aren't going to work here until you get it reversed. Period. |
| Chapin: | Okay. |
| Kruse: | You decide if you are working here or not. |
| Chapin: | Alright. I am going to do it. I want to work here. |

---

[1]Although Fort Wayne Acura/Subaru and Fort Wayne Toyota/Lexus are independent dealerships, both are owned by the same person, Bob Rohrman.

| | |
|---|---|
| Kruse: | Go get it handled. |
| Chapin: | I will. Alright. |

(Pl. Ex. 3.)

The Plaintiff left the dealership after the conversation but did not withdraw his EEOC charge. He did not return to the dealership until March 4, when he came in to pick up his pay check. On that day, the Plaintiff once again spoke with Kruse:[2]

| | |
|---|---|
| Kruse: | . . . why haven't you been to work? |
| Chapin: | You told me, don't come back unless I reversed [the EEOC charge]. That is your exact words. |
| Kruse: | You misunderstood. |
| Chapin: | I didn't misunderstand. You were very clear. |
| Kruse: | I didn't tell you that. |
| Chapin: | You said until I take care of that, I don't have a job. |
| Kruse: | I didn't say that. I didn't say you don't have a job. I said take care of the issue and come back . . . that is what I said. |
| Chapin: | Ok. |
| Kruse: | I didn't fire you, if that is what you are trying to say. |
| Chapin: | I took it as you being fired. |
| Kruse: | I didn't fire you. |
| Chapin: | You said I didn't have job until I . . . |
| Kruse: | I didn't say that. I didn't say you didn't have a job. |
| Chapin: | Okay. |
| Kruse: | You are trying to twist things. |
| Chapin: | I am not trying to twist things. |
| . . . | |
| Kruse: | So, what are you going to do? What are you doing? Are you going to . . . you going to come work for me or what? |
| Chapin: | Well, I wanted to. I mean, that was my intention, until you said . . . |
| Kruse: | Then I suggest that you get dressed and go back to work. |
| Chapin: | But you told me that you said you would fire me, based on my production. |

(Pl. Ex. at 1–2.)

In this same conversation, Kruse also told the Plaintiff that he wanted the Plaintiff to

_____

[2]Human Resources Manager, Luke Luther, was also present at this conversation.

4

continue working at the dealership and that he wanted the Plaintiff to "be respectful of Bob

Rohrman." (*Id.* at 4.) After the conversation, the Plaintiff picked up his check and left. That was

the last time he was at the dealership.

On March 8, Kruse sent the Plaintiff a letter:

As per our conversation of Friday March 4, 2005, it is our understanding that upon clarification of your misunderstanding that you clearly understood that you are still employed with us and expected to be at work. You were to notify us if you were going to be able to work on Saturday March 5, 2005. You also indicated at that time that you felt that you would be able to return to work on Monday March 7, 2005. You further stated that you would call me if this became a problem. On Monday March 7, 2005 I called you and left a message with an individual for you to call me. At this time I have not heard from you. You are expected and needed at work. I am concerned. Please contact me to advise me of your intentions.

(Pl. Ex. 5.)

On March 14, Kruse sent the Plaintiff another letter:

Despite numerous attempts to contact you by mail as well as by phone, we have failed to receive any response from you regarding your intentions to continue employment with us. Please contact me to advise us of your intentions. If you fail to contact us within the next 5 days, we will consider this to be your voluntary resignation and reflect this in your employment file accordingly. You may contact me at [phone number].

(Pl. Ex. 6.)

On March 18, the dealership's Human Resources Manager, Luke Luther, also sent the

Plaintiff a letter:

I was contacted by [blank] regarding your relationship with Fort Wayne Toyota. The individual [blank] indicated that you had expressed concern whether you had a position at Fort Rohr. I am not sure how you could have expressed this feeling [blank] You met with Larry and I on Friday, March 4, 2005, when you indicated that you would be returning to work on Monday, March 7, 2005. When you failed to call, or appear for work, a letter was sent Tuesday, March 8, 2005, reiterating your position of employment with Fort Rohr Motors. Moreover, on March 14, 2005, an additional correspondence was sent to you regarding your employment with Fort Rohr Motors. Be advised that you have a position ready and waiting for

you at our dealership, however; your continued failure to contact us or appear for work would cause us to believe that you have voluntarily relinquished your position. As you are aware, any relationship needs, at its core, communication. We have been attempting to communicate with you with no response.

Please advise us of your intention.

(Def. Ex. C.)

The Plaintiff did not respond to any of the letters. He was convinced that the purpose of the letters was for the dealership to cover its retaliatory conduct and that, if he returned, he would be eventually fired under the pretense of non-performance.

**B.      Discussion**

**(1)      *Retaliation Claim***

Fort Wayne Toyota/Lexus[3] acknowledges that, by filing a charge with the EEOC, the Plaintiff engaged in a protected activity. However, it insists that he did not suffer an adverse employment action. The Defendant submits that the Plaintiff

> presented no evidence that he was terminated from his employment, or that there were any significant changes in his benefits as a result of filing the Charge of Discrimination. Nowhere on the audio tape introduced into evidence did Kruse point-blank tell [the Plaintiff] he was being fired because he filed the Charge of Discrimination.

 (Pl. Br. at 4.) The Defendant also argues that a reasonable jury could not have found that the Plaintiff was constructively discharged because he did not show that his working conditions became so intolerable that he was compelled to resign. Finally, the Defendant points to Kruse's and Luther's letters as proof that the Plaintiff was assured of his continued employment at the

---

[3]The Court will refer to Fort Wayne Toyota/Lexus as "the Defendant."

dealership and that it was his own choice to not return to work.

At trial, the question was whether the Plaintiff presented enough evidence to permit the jury to conclude that he was the victim of retaliation. *See Filipovich v. K & R Exp. Systems, Inc.*, 391 F.3d 859, 863 (7th Cir. 2004). If the Plaintiff did present enough evidence to allow a rational jury to find that he was the victim of retaliation, the verdict must stand. *Id.* Otherwise, the Court may enter a judgment for the Defendant.

Apparently, the Defendant believes that a reasonable jury could not find that Kruse fired the Plaintiff unless he expressly stated so. This, however, is unnecessary. Otherwise, an employer who retaliates against his employees, could always avoid liability by couching his words. *See Hinthorn v. Roland's of Bloomington, Inc.*, 519 N.E.2d 909, 912 (Ill. 1988) ("[A]n employer cannot escape responsibility for an improper discharge simply because he never uttered the words "you're fired."). No magic words are required for retaliatory conduct; rather, one looks to their meaning and effect.

In this case, the jury could reasonably conclude that, on February 28, Kruse meant to tell the Plaintiff that, unless he withdrew his EEOC charge, he no longer had a job at the dealership. The Defendant would like to attribute Kruse's words to a momentary outburst of anger during which he said what he did not mean. The Defendant's attorney made the same argument at the close of the case, but a reasonable jury could have decided otherwise. Kruse knew of the EEOC charge for three days before he met with the Plaintiff. Accordingly, a reasonable jury could have believed not only that Kruse meant what he was saying but what he was saying was the result of three-day-long premeditation. Whatever the case, Kruse's question—"Do you want to work here?"—and the admonishment—"Then you need to fucking reverse the claim right away, and it

needs to be done today," "Go do it right now. You aren't going to work here until you get it reversed. Period," "You decide if you are working here or not"—could reasonably be interpreted as firing unless the charges were withdrawn. Since the Plaintiff did not withdraw the charges, a reasonable jury could have concluded that he was then fired in retaliation.

Moreover, Kruse told the Plaintiff that, unless the charges were withdrawn, he could fire him under the pretext of nonperformance. Therefore, a reasonable jury could have believed that Kruse's and Luther's subsequent letters assuring the Plaintiff of his employment with the dealership were but a set up for a later discharge. Under these circumstances, the Court cannot say that there was no legally sufficient evidentiary basis for a reasonable jury to find for the Plaintiff on his retaliation claim.

Since a reasonable jury could have believed that the Plaintiff's employment became terminated when he failed to withdraw the EEOC charges, a discussion about the constructive discharge is unnecessary. But here, too, the evidence supports the finding that, even if the Plaintiff was not fired when he refused to withdraw the EEOC charge, it was only a matter of time when he would have been terminated under the pretext of nonperformance: the Plaintiff was told so by Kruse himself. A reasonable jury could have believed that the Plaintiff's fate had already been decided and only the time of its execution was uncertain. In essence, that is one of the aspects of constructive discharge, and the Plaintiff could have chosen to leave at his, not the Defendant's, timing. Therefore, the Court will not disturb the jury's verdict.

**(2)**     *Punitive Damages*

The Defendant argues that punitive damages against it were unwarranted because "[t]here

was clearly no evidence presented by [the Plaintiff] as to malicious conduct on the part of Kruse"
and because "the Plaintiff presented no evidence that Kruse knew that what he purportedly said
. . . satisfies the reckless indifference standard." (Pl. Br. at 8.)

Title VII allows a plaintiff to recover punitive damages if he "demonstrates that the
respondent engaged in a discriminatory practice or discriminatory practices with malice or with
reckless indifference to the federally protected rights of an aggrieved individual." 42 U.S.C. §
1981a(b)(1). "The terms 'malice' and 'reckless indifference' refer to the employer's knowledge
that it may be violating federal law, not its awareness that it is engaging in discrimination. Thus,
the employer must perceive some risk that its actions violate federal law in order to be liable for
punitive damages." *Cooke v. Stefani Mgmt. Serv., Inc.*, 250 F.3d 564, 568 (7th Cir. 2001) (citing
*Kolstad v. Am. Dental Ass'n*, 527 U.S. 526, 535 (1999)).

The trial evidence was sufficient for a reasonable jury to find that Kruse was not merely
aware that he was engaging in unlawful activity, but that he did it with malice and with reckless
indifference to the Plaintiff's right to file charges with the EEOC without fear of repercussion. All
of the Defendant's managers were familiar with the dealership's anti-discrimination policy. And
even more so Kruse, who was not a low level manager, but a seasoned General Manager. Also, in
this position, he was charged with enforcing the dealership's anti-discrimination policies. (*See*
Def. Ex. X, Harassment Policy.) Consequently, a reasonable jury could have believed that Kruse
knew that the company had anti-discrimination policies to prevent violations of federal law but
chose to coerce the Plaintiff despite them. The notion that the person who was supposed to protect
the Plaintiff's rights became an aggressor is consistent with the evidence at trial, justifying an
award of punitive damages.

Moreover, as noted above, Kruse met with the Plaintiff three days after he learned that the Plaintiff filed an EEOC charge against Fort Wayne Acura/Subaru. Kruse had that time to gather his thoughts, consult with legal counsel, review the company's policies, etc. But when Monday came, Kruse's response to the Plaintiff's action was "You need to fucking reverse the claim right away, and it needs to be done today"; "Go do it right now"; "You aren't going to work here until you get it reversed. Period." In light of this evidence, the Court may not say that there was no legally sufficient evidentiary basis for a reasonable jury to award punitive damages to the Plaintiff.

**C.      Conclusion**

The Jury's verdict was based on sufficient evidence before it. Therefore, the Court denies the Defendant's Motion for Judgment as a Matter of Law [DE 54].

SO ORDERED on June 11, 2007.

     S/ Theresa L. Springmann
THERESA L. SPRINGMANN
UNITED STATES DISTRICT COURT