# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF INDIANA
# FORT WAYNE DIVISION

| | | |
|---|---|---|
| TRENT L. CHAPIN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CAUSE NO. 1:06-CV-34-TS |
| | ) | |
| FORT-ROHR MOTORS, INC., | ) | |
| | ) | |
| Defendant. | ) | |

## OPINION AND ORDER

Before the Court is Plaintiff's Petition for Taxation of Costs and for Assessment of Attorneys Fees [DE 89], filed on January 15, 2009. The Plaintiff asks for $82,855.05 in attorney's fees and costs.

## BACKGROUND

This is a civil rights discrimination and retaliation lawsuit. The parties had a jury trial on the Plaintiff's claims that the Defendant violated his rights secured by Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.*, as amended. The Plaintiff claimed that his former employer, Fort Wayne Acura/Subaru, fired him because he was a white Christian, and that his new employer, Fort Wayne Toyota/Lexus, retaliated against him once he complained about it to the EEOC. Defendant Fort-Rohr Motors, Inc., owns both former employers. The jury found that the Defendant retaliated against the Plaintiff in violation of Title VII, but rendered a verdict for the Defendant on the reverse discrimination claim. The jury awarded $100,000 in compensatory damages and $1,000,000 in punitive damages on the retaliation claim. The Court reduced the total damages to $100,000 to comply with the statutory cap, 42 U.S.C. § 1981a, but denied the Defendant's motion for remittitur. The Court then considered arguments and held a hearing on

other relief such as back pay and front pay and awarded $55,508.55 in back pay and prejudgment interest.

The Plaintiff's Petition [DE 89] states that total attorney's fees and costs were $83,305.05. Of that amount, costs are $1225.05 and attorney's fees are $82,080.00. However, Plaintiff's counsel is seeking $450 less than the total amount, $82,855.05. (Aff. of Attorney's Fees 1, DE 89-2.) Attached to the Plaintiff's Petition are thirteen exhibits, including counsel's affidavit, hourly records, and receipts.

On January 30, the Defendant filed its Objections [DE 91], arguing that the attorney's fees should be reduced by half and objecting to several costs. On February 10, the Plaintiff filed a Response to Defendant's Objections [DE 93]. On the same day, the Defendant filed its Notice of Appeal [DE 94].[1]

## ANALYSIS

**A.     Attorney's Fees**

The Defendant argues that the attorney's fees should be reduced by half because the Plaintiff prevailed on one of two claims, he was refused front pay, and he did not receive all of the back pay that he sought.

**1.     *Legal Standard***

Prevailing plaintiffs in civil rights cases such as this one are entitled to "reasonable

---

[1] This Court may exercise jurisdiction over this aspect of the case and rule on the present Petition because it is "a discrete matter ancillary to the issues under consideration in the other court." *May v. Sheahan*, 226 F.3d 876, 879 (7th Cir. 2000). Awarding attorney's fees is an example of such a discrete, ancillary matter. *Kusay v. United States*, 62 F.3d 192, 194 (7th Cir. 1995).

attorney's fees." 42 U.S.C. § 1988(b). The presumption is that a prevailing plaintiff "should ordinarily recover an attorney's fee unless special circumstances would render such an award unjust." *Hensley v. Eckerhart*, 461 U.S. 424, 429 (1983); *Dunning v. Simmons Airlines, Inc.*, 62 F.3d 863, 872 (7th Cir. 1995). The Supreme Court in *Christiansburg Garment Co. v. EEOC*, 434 U.S. 412 (1978), identified three reasons why prevailing plaintiffs in civil rights suits are entitled to attorneys fees:

> the need to facilitate the enforcement of the civil rights laws through "private attorneys general," the risk of creating a disincentive for plaintiffs to bring civil rights suits if prevailing defendants could obtain their attorneys' fees as a matter of course, and lastly, "when a district court awards counsel fees to a prevailing plaintiff, it is awarding them against a violator of federal law."

*Payne v. Milwaukee County*, 288 F.3d 1021, 1026 (7th Cir. 2002) (quoting *Christiansburg*, 434 U.S. at 416–18, 421–22). "[P]laintiffs may be considered 'prevailing parties' for attorney's fees purposes if they succeed on any significant issue in litigation which achieves some of the benefit the parties sought in bringing suit." *Hensley*, 461 U.S. at 433.

"The initial fee award is assessed by multiplying the number of hours reasonably expended on the litigation times a reasonable hourly rate. This lodestar figure may be adjusted upward or downward depending on the important factor of the results obtained." *Dunning*, 62 F.3d at 872 (citations, footnote, and internal quotations omitted).

When a plaintiff makes a partial recovery, as in this case, the two key issues are whether the successful and unsuccessful claims are related or unrelated, and what level of success the plaintiff achieved, *Hensley*, 461 U.S. at 434, specifically, "whether the plaintiff achieved a level of success that makes it appropriate to award fees for unsuccessful claims," *Dunning*, 62 F.3d at

3

873 (ellipses omitted). A court may consider other factors as well.[2] If the claims are unrelated, "work on an unsuccessful claim cannot be deemed to have been expended in pursuit of the ultimate result achieved." *Hensley*, 461 U.S. at 435. However,

> in other cases, the plaintiff's claims for relief will involve a common core of facts or will be based on related legal theories. Much of counsel's time will be devoted generally to the litigation as a whole, making it difficult to divide the hours expended on a claim-by-claim basis. Such a lawsuit cannot be viewed as a series of discrete claims. Instead the district court should focus on the significance of the overall relief obtained by the plaintiff in relation to the hours reasonably expended on the litigation.

*Id.* "Where a plaintiff has obtained excellent results, his attorney should recover a full compensatory fee. Normally this will encompass all hours reasonably expended on the litigation." *Id.* "[T]he fee award should not be reduced simply because the plaintiff failed to prevail on every contention raised in the lawsuit. . . . [T]he courts' rejection of or failure to reach certain grounds is not a sufficient reason for reducing a fee." *Id.* "Nor is it necessarily significant that a prevailing plaintiff did not receive all the relief requested." *Id.* at 436 n.11.

The Seventh Circuit has cited *Hensley* for the proposition that a court "may award compensation for time spent pursuing unsuccessful claims that related to the successful claims." *Shott v. Rush-Presbyterian-St. Luke's Med. Ctr.*, 338 F.3d 736, 739 (7th Cir. 2003). "There is no precise rule or formula for making these determinations." *Hensley*, 461 U.S. at 436. Instead, a

---

[2] *Hensley* listed twelve factors:
(1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

*Hensley*, 461 U.S. at 430 n.3. However, the Supreme Court in *Hensley* stated that "many of these factors usually are subsumed within the initial calculation of hours reasonably expended at a reasonable hourly rate." *Id.* at 434 n.9.

4

district court has discretion to reduce the amount and to decide by how much, whether by the hours expended or by a percentage reduction in the fees. *Id.*; *Fleming v. County of Kane, State of Ill.*, 898 F.2d 553, 564 (7th Cir. 1990). On the other hand, *Hensley* also states that if "a plaintiff has achieved only partial or limited success, the product of hours reasonably expended on the litigation as a whole times a reasonable hourly rate *may* be an excessive amount." 461 U.S. at 436 (emphasis added).

1.  *Prevailing Party Status, Hourly Rate, and Number of Hours*

As a preliminary matter, the Court notes that the Defendant correctly acknowledges that the Plaintiff is the prevailing party. The Plaintiff succeeded in a "significant issue in litigation,"*Hensley*, 461 U.S. at 433, specifically, his retaliation claim, and that resulted in the Plaintiff "achiev[ing] some of the benefit [he] sought in bringing suit," *id.* The Court also notes that the Defendant does not object to or dispute the hourly rate of Plaintiff's counsel. (Def.'s Objs. 3) ("Toyota does not dispute the hourly rate."). Also, the Defendant at no point claims that the hours devoted to the case "were not 'reasonably expended.'" *Spegon v. Catholic Bishop of Chicago*, 175 F.3d 544, 550 (7th Cir. 1999). The Defendant only objects to the factor (which is the primary factor) regarding the degree of success of the prevailing party. The Court has reviewed Plaintiff counsel's hourly submissions and finds the amount of hours expended on this case to be reasonable. The Court also finds that the hourly amount of $225 per hour is reasonable.

The remaining issue is whether the Court should in its discretion reduce the attorney's fees due to partial success. It should be clear that the Court may, but does not have to, reduce the attorney's fee amount because the Plaintiff prevailed on one of two claims.

**2.**     *Partial Recovery – Whether the Plaintiff's Two Claims are Related*

The Defendant argues that two claims are not related because the claims "were against two separate employers," "the witnesses testifying on each claim were separate and distinct," and the legal standards for each claim were different. (Def.'s Objs. 7.) "Chapin could have easily filed two separate lawsuits against each employer because the two claims are not inner connected and do not share a common core set of facts." (Def.'s Objs. 7.) The Defendant also cites *Washington v. Philadelphia County Court of Common Pleas*, 89 F.3d 1031 (3d Cir. 1996), which affirmed a district court's decision to reduce attorney's fees by fifty percent because of partial success.

The Court is not persuaded that the Plaintiff's discrimination and retaliation claim were unrelated. Rather, it is clear to the Court after presiding over this case for three years— including pretrial motions, the four-day trial, and numerous post-trial motions —and after considering *Hensley* and Seventh Circuit caselaw, that the claims in this case are related and share "a common core of facts or related legal theories." *Jaffee v. Richmond*, 143 F.3d 409, 414 (7th Cir. 1998).

First, the Court finds that the Plaintiff's successful retaliation claim could not have been tried effectively without Plaintiff's counsel reviewing and analyzing the facts that led to the underlying discrimination charge. *See Merriweather v. Family Dollar Stores of Ind., Inc.*, 103

6

F.3d 576, 584 (7th Cir. 1996) (affirming decision to award attorney's fees in part because the district court relied on this basis). The Plaintiff's theory was that the Defendant retaliated against him because he filed an EEOC charge of discrimination against the Defendant, or its employees. The Defendant's actions, particularly the tape-recorded comments of General Manager Larry Kruse, supported this theory. Kruse expressed outrage that the Plaintiff had dared to file the discrimination charge against "Bob Rohrman," who is the owner of the Defendant company. Without an explanation of the underlying discrimination allegation, the retaliation claim would have been without context. The Defendant makes too much of the distinction between retaliation allegations against Toyota and discrimination allegations against Acura. Both are owned by the Defendant, Fort-Rohr Motors, Inc. Evidence at trial in the form of a tape recorded conversation between the Plaintiff and Kruse made this clear:

> Kruse: I need to ask you, what is your mentality in filing the EEOC claim against Bob Rohrman?
> Chapin: What do you mean?
> Kruse: What do I mean?
> Chapin: It is actually against Nadeem, is that correct?
> Kruse: Who does Nadeem work for?
> Chapin: Rohrman.
> Kruse: Who do you work for?
> Chapin: Rohrman.
> General Manager: What the hell is your mentality?
> . . . .
> Kruse: Do you want to work here?
> Chapin: Yes, I do.
> Kruse: If I wanted to work here on the floor, I wouldn't file suit against him.
> . . . .
> Kruse: If you want to file a claim, you need to work somewhere else because you are not performing here. I can let you go for nonperformance.
> Chapin: No, I want to work here.
> Kruse: You need to fucking reverse the [EEOC discrimination] claim right away and it needs to be done today.
> Chapin: Okay. I have to go down there.

7

> Kruse: Go do it right now. You aren't going to work here until you get it reversed. Period.

(Tape Recording Tr. 1:4–2:15, Pl.'s Trial Exhibit C.)

Second, *Hensley* discussed an unrelated claim as "a claim that is distinct in all respects from [the] successful claims." 461 U.S. at 440. That standard indicates that there can be no commonality between the two claims in this case. Here, the unsuccessful discrimination claim cannot be said to be distinct in all respects from the successful retaliation claim. One of the elements of the retaliation claim involved consideration of the effect of the Plaintiff filing the discrimination charge. A key Defendant witness in the case, Larry Kruse, was involved in both the discrimination claim and the retaliation claim. Also, the Court notes that it is not making a finding that the two claims are related merely because they are "causally related." *See Merriweather*, 103 F.3d 576, 583 (7th Cir. 1996) (noting that causally related claims are not related for purposes of *Hensley*).

Third, the Seventh Circuit ruled that discrimination and retaliation claims were related claims in two similar cases. In *Dunning*, the Seventh Circuit affirmed the district court's decision to grant the full amount of attorney's fees despite the defendant's arguments that the plaintiff prevailed only on her retaliation claim, did not succeed on her sexual harassment claim, and she dropped her gender-based discrimination claim before trial. 62 F.3d at 872–74.

> In order to prove her retaliation claim, Dunning was required to present evidence that she exercised her Title VII rights and suffered an adverse employment action as a result. Thus, all the evidence about sexual harassment was relevant for the retaliation claim to establish that she reasonably believed in good faith that the practice she opposed violated Title VII. Dunning's two claims had a common core of facts and were based on related legal theories. Because of the interrelated nature of the two claims, her attorneys had to prepare for the litigation as a whole, rather than merely preparing for a series of discreet claims. Dunning achieved

excellent results, in that she received the relief she requested (backpay for eighteen weeks), and the grant of the fee request was not an abuse of discretion.

*Id.* at 874 (internal quotations and citations omitted). In *Soto v. Adams Elevator Equipment Co.*, 941 F.2d 543 (7th Cir. 1991), the plaintiff prevailed on her retaliation claim but not her § 1981 claim for discrimination on account of her Hispanic ancestry. The district court awarded the full attorney's fees amount. The Seventh Circuit affirmed because the two claims "[w]ere related substantially . . . [and] we see no reason to reduce her attorney's fee award below the lodestar amount because of her partial success." *Id.* at 553.

Fourth and last, the Court is not persuaded by the Third Circuit case cited by the Defendant. The case is distinguishable because it involved nine claims, five of which did not survive a summary judgment motion, and because the jury awarded the plaintiff such a small amount of damages compared to what he sought. *Washington*, 89 F.3d at 1044. This case involved only two claims that went to a jury trial; there was no summary judgment motion. Also, the jury in this case awarded the Plaintiff a large award, $100,00 in compensatory damages and $1,000,000 in punitive damages. (The Court's reduction of the award due to the statutory cap does not affect the comparison here.) Also, the Third Circuit's deferential standard of review of the district court's decision softens any precedential value, and, in any event, the case is not binding authority in this circuit. In conclusion, the Court finds that the Plaintiff's two claims are related and share a common set of core facts.

**3.** *Partial Recovery – Amount of Attorney's Fees for Degree of Success*

In this case, the *Hensley* factors, especially the degree of the Plaintiff's success, indicate that the Plaintiff should receive the full attorney's fees amount. This case was extremely hard

9

fought. The Defendant put on a vigorous defense from the beginning of the case. Also, as discussed earlier, the claims were related, so Plaintiff's counsel could not have divided his time devoted to the case by each claim. See *Hensley*, 461 U.S. at 435. ("Much of counsel's time will be devoted generally to the litigation as a whole, making it difficult to divide the hours expended on a claim-by-claim basis. Such a lawsuit cannot be viewed as a series of discrete claims.")

The amount involved and the results obtained is an important factor. *Hensley*, 461 U.S. at 430 n.3. The Plaintiff did not list a damages amount in his Complaint [DE 1]. However, the amount of the original jury award— $100,000 in compensatory damages and $1,000,000 in punitive damages—is relevant to this consideration. The jury evidently felt strongly enough about the blatant retaliation that it imposed a large amount of punitive damages. The Court has previously ruled that the jury was justified in awarding punitive damages. (June 11, 2007, Court's Opinion and Order Denying Def.'s Renewed Mot. for Judgement as a Matter of Law 9, DE 57) ("The trial evidence was sufficient for a reasonable jury to find that Kruse was not merely aware that he was engaging in unlawful activity, but that he did it with malice and with reckless indifference to the Plaintiff's right to file charges with the EEOC without fear of repercussion."). The original jury award of $1,100,000 in damages was only reduced to $100,000 because of the statutory cap, 42 U.S.C. § 1981a, but the Court in doing so rejected the Defendant's argument that the $100,00 in compensatory damages was excessive. (July 25, 2007, Court's Opinion and Order 2–3, DE 63). The Court further added: "A sizeable punitive damage award would not be unreasonable in this case, in light of the Defendant's taped comments to the Plaintiff ordering him to withdraw his discrimination claim and threatening to terminate him for nonperformance if he did not." (*Id.* at 3.) An award of all attorney's fees in a case where there

was such blatant retaliation serves the three purposes of the fee award statute, 42 U.S.C. § 1988. *See Payne v. Milwaukee County*, 288 F.3d at 1026. These factors call for a full award despite the fact that the jury rendered a verdict for the Plaintiff on his retaliation claim but not his discrimination claim.

The Court is not persuaded by the outcome of the post-trial damages phase that an award of less than all attorney's fees is appropriate. The Defendant argues that because the Plaintiff's award of back pay was significantly lower than what he sought and because he received no front pay, his attorney's fees should be reduced. While it is true that the Plaintiff did not entirely prevail in this part of the case, he was very successful overall and still was awarded approximately $55,000 in back pay after the trial. This level of success does not call for a reduction in the attorney's fees.

In addition, the Court finds that this case is similar to *Soto* and *Dunning*, discussed earlier, where the plaintiffs achieved excellent results on some of their claims, and the Seventh Circuit affirmed the decision to award them the full attorney's fees amounts. Furthermore, the Plaintiff has not added attorney's fees for the amount of time he has spent on this issue of attorney's fees, so his total amount already includes a small discount.

Last, the Court previously noted that two similar cases led to judgments that were slightly less than the one here, (*see* July 25, 2007, Court's Opinion and Order 3, DE 63) (stating that similar cases had awards of $75,000 and $80,185.68), so it is reasonable to award full attorney's fees for the higher award here of $155,508.55. *Hensley*, 461 U.S. at n.3 (noting that the twelfth factor is the amount of awards in similar cases).

In conclusion, the Court in its discretion will award the entire attorney's fee amount of $82,855.05 to the Plaintiff.

**B.**     **Costs**

Federal Rule of Civil Procedure 54(d) provides that "costs other than attorney's fees shall be allowed as of course to the prevailing party unless the court otherwise directs." Although Rule 54(d) creates a presumption that the prevailing party will recover these costs, the decision to make the award of costs is entrusted to the sound discretion of the district court. *Hastert v. Ill. State Bd. of Election Comm'rs*, 28 F.3d 1430, 1437 (7th Cir. 1993); *Soler v. Waite*, 989 F.2d 251, 254–55 (7th Cir. 1993). The presumption is difficult to overcome, and a district court's discretion is narrowly confined. *Congregation of the Passion, Holy Cross Province v. Touche, Ross & Co.*, 854 F.2d 219, 222 (7th Cir. 1988). Rule 54(d) establishes a principle of preference—a district court must award costs unless it states good reasons for denying them. *Id.* (citing *Coyne-Delany, Inc. v. Capital Dev. Bd.*, 717 F.2d 385, 392 (7th Cir. 1983)). Generally, only misconduct by the prevailing party worthy of a penalty (for example, calling unnecessary witnesses, raising unnecessary issues, or otherwise unnecessarily prolonging the proceedings) or the losing party's inability to pay will justify denying costs. *Id.* (citing cases). Unless the losing party affirmatively shows that the prevailing party is not entitled to costs, a district court must award them, "as of course." *Id.* Nonetheless, before it can award costs to the prevailing party, the court must determine that the expenses are allowable and reasonable, both in amount and necessity to the litigation. *Moore v. Univ. of Notre Dame*, 22 F. Supp. 2d 896, 913 (N.D. Ind. 1998).

The costs that a federal court may tax are:

> (1) Fees of the clerk and marshal;
> (2) Fees of the court reporter for all or any part of the stenographic transcript necessarily obtained for use in the case;
> (3) Fees and disbursements for printing and witnesses;
> (4) Fees for exemplification and copies of papers necessarily obtained for use in the case;
> (5) Docket fees under section 1923 of this title;
> (6) Compensation of court appointed experts, compensation of interpreters, and salaries, fees, expenses, and costs of special interpretation services under section 1828 of this title.

28 U.S.C. § 1920.

The Defendant challenges the following costs that were claimed by the Plaintiff: fees for medical records, express mail costs, private process server fees, and a transcription fee. The Plaintiff did not respond to the Defendant's objections to costs,stating only that he "will defer to the District Court's analysis." (Pl. Resp. to Def.'s Objs. 13, DE 93.)

1.  *Medical Records*

The Defendant objects to $273 for medical records from Indiana Surgical Specialists, LLC ($62), ChartONE, Inc. - Lutheran Hospital ($68.90), and Parkview Hospital ($142.10). The Defendant states that no medical experts testified at trial and no medical records were introduced at trial.

However, as the Court previously noted, the Plaintiff's physical health and emotional state were relevant to damages and were considered during the trial. (*See* July 25, 2007, Court's Opinion and Order 2–3) ("[T]he Plaintiff testified that as a result of his termination, he was humiliated and depressed, . . . he had difficulty sleeping, and he had stomach pains.). Given that these health and emotional issues would be relevant to the Plaintiff's claims, it was reasonable to

13

pay to obtain the Plaintiff's medical records, which were "necessarily obtained for use in the case." 28 U.S.C. § 1920(4); *see also Finchum v. Ford Motor Co.*, 57 F.3d 526, 534 (7th Cir. 1995).

The Plaintiff's exhibits show that the medical records from Indiana Surgical Specialists, LLC, and ChartONE, Inc. - Lutheran Hospital were the Plaintiff's medical records. (*See* Receipts DE 89-7). However, there is no receipt for the Parkview Hospital records of $142.10, and it is not clear if those were the Plaintiff's records or someone else's. As a result, the Court does not have a basis to rule that the cost was reasonably necessary, *Moore*, 22 F. Supp. 2d at 913, so the Court can only award $130.90 for the medical records. If the Plaintiff provides information about the third medical records charge at Parkview Hospital by April 10, 2009, then the Court will consider it.

### 2. *Express Mail Costs*

The Defendant also objects to $20.55 for express mail sent to the Plaintiff on September 29, 2006. The Defendant's objection to this cost is well taken. *See Moore*, 22 F. Supp. 2d at 915 ("[C]osts such as postage and mail services have been disallowed on the grounds that such expenses are generally considered overhead, or part of the cost of operating a law firm." (internal quotations omitted)).

### 3. *Private Process Server*

The Defendant objects to $280 in private process server costs: $35 for service of subpoenas (charged on March 3, 2007), $110 for a processor fee (charged on May 23, 2007), and

$135 "regarding subpoenas to Lucinda Baell, Bill Hulwick & Larry Kruse," (DE 89-5 at 3), (charged on September 11, 2007). The charge for $110 appears to be for investigative services by the Hosford Agency. (*See* Receipt, DE 89-6 at 1.)

A party may recover private process server costs as long as those costs "do not exceed the marshal's fee." *Collins v. Gorman*, 96 F.3d 1057, 1060 (7th Cir. 1996). The Court's own research uncovers that in this district the Marshal Service charges $45.00 per hour plus mileage at $.55 a mile. Thus, the charges of $35 and $135 appear reasonable. The latter charge was for serving three subpoenas on three potential witnesses, so it breaks down to $45 per subpoena and person served. The Court does not have enough information to determine if the $110 fee (for serving one or more subpoenas or for investigative work) is reasonable because there is no specific information on what the charge is for: who was served, how many persons were served, how far the process server had to travel, or what subject was investigated. As a result, the Court does not have a basis to rule that the cost was reasonably necessary, *Moore*, 22 F. Supp. 2d at 913. If the Plaintiff provides that information by April 10, 2009, then the Court will consider it.

**4.**     *Transcripts*

The Defendant objects to $180 for tape transcripts by court reporter Charles D. Holm because the transcripts were not introduced at trial.

Use at trial is not the criteria for whether costs may be awarded. *State of Ill. v. Sangamo Const. Co.*, 657, F.2d 855, 867 (7th Cir. 1981). Rather, the prevailing party can recover "[f]ees of the court reporter for all or any part of the stenographic transcript necessarily obtained for use in the case." 28 U.S.C. § 1920(2) (emphasis added). This includes deposition transcripts, *SK Hand*

*Tool Corp. v. Dresser Indus., Inc.*, 852 F.2d 936, 944 (7th Cir. 1988), and "trial transcripts and transcripts from other court proceedings necessarily obtained for use in the case," *Majeski v. City of Chicago*, 218 F.3d 816, 825 (7th Cir. 2000). The necessity of the transcript "must be made in light of the facts known when the transcript was requested," *id.*, and a transcript need not be absolute indispensable in order to provide the basis of an award of costs," *id.* (internal quotations omitted).

In this case, the receipt for the $180 transcription fee does not state what was transcribed, for example, a deposition or some other proceeding, and it does not state the person involved in the proceeding. It may well be the case that the transcripts are from the tape-recorded conversations between the Plaintiff and Kruse. In that case, the cost would be awarded to the Plaintiff. But without the basic information for this charge, the Court does not have a basis to rule that the cost was reasonably necessary, *Moore*, 22 F. Supp. 2d at 913, and it is unable to award the costs of this transcription to the Plaintiff. If the Plaintiff provides that information by April 10, 2009, then the Court will consider it.

In conclusion, the Plaintiff will be awarded $772.40 in costs ($1225.05 claimed costs less $452.65 in costs disallowed at this time).

## CONCLUSION

The Plaintiff's costs to be awarded at this time are $772.40. With the Plaintiff's $450 discount in attorney's fees, (Aff. of Attorney's Fees 1, DE 89-2), the total for attorney's fees and costs at this time is $82,402.40. Factoring in the previously calculated award to the Plaintiff of $155,508.55, the complete total at this time is $237,910.95.

The Plaintiff has up to and including April 10, 2009, to provide the additional information for those costs whose basis was not sufficient for the Court to order an award. The Defendant will have up to and including April 20, 2009, to respond and make any argument about the remaining contested costs.

For the foregoing reasons, the Plaintiff's Bill of Costs [DE 89] is GRANTED IN PART and DENIED IN PART. Costs are approved in the amount of $82,402.40. The Defendant's objections to the Plaintiff's Bill of Costs are overruled except for the express mail costs. The Clerk is ORDERED to tax costs against the Defendant in the amount of $82,402.40. If the Plaintiff does not make file the additional information, final judgment will be entered.

SO ORDERED on March 31, 2009.

    s/ Theresa L. Springmann
THERESA L. SPRINGMANN
UNITED STATES DISTRICT COURT