```
           IN THE UNITED STATES DISTRICT COURT
              NORTHERN DISTRICT OF INDIANA
                  FORT WAYNE DIVISION

TRENT L. CHAPIN,                          )
                                          )
          Plaintiff,                      )
                                          ) CIVIL
vs.                                       ) CAUSE NO:
                                          ) 1:06-CV-34
MID-STATES MOTORS, INC.,                  )
          Defendant.                      )
----------------------------------------
```

**TRANSCRIPT OF PLAINTIFF'S OPENING STATEMENT HELD
APRIL 17, 2007, BEFORE THE
HONORABLE THERESA L. SPRINGMANN, UNITED STATES
DISTRICT JUDGE**

**APPEARANCES:**

| | |
|---|---|
| **FOR THE PLAINTIFF:** | **ROBERT VEGELER, ESQ.**<br>110 West Berry Street<br>Fort Wayne, In  46802 |
| **FOR THE DEFENDANT** | **JAMES BUCCHOLZ, ESQ.**<br>1400 One Summit Square<br>Fort Wayne, IN  46802 |
| **OFFICIAL COURT REPORTER:** | **TINA M. GALLUCCI,<br>RMR, CRR, FCRR<br>U.S. DISTRICT REPORTER<br>1300 S. HARRISON STREET<br>SUITE 2105<br>FORT WAYNE, IN  46802<br>(260) 423-3060** |

COMPUTERIZED TRANSCRIPTION OF STENOGRAPHIC NOTES

1    (Whereupon, the following proceedings were held on April
2    17, 2007:)

### OPENING STATEMENT ON BEHALF OF PLAINTIFF

**MR. ROBERT VEGELER:** Ladies and gentlemen of the jury, as the Judge indicated, this is a statement not argument, not supposed to be argument. It's not evidence.

So upon behalf of Mr. Chapin, I want to break it down into three steps for you to organize how you hear the testimony and hopefully our testimony will follow that pretty close, because it's chronological.

So let's go to step one. That's Mr. Chapin and his involvement with the Fort Wayne Acura Subaru.

Now, you'll hear testimony that Mr. Chapin has been in the car sales business for over ten years, and that he had been up in Minnesota, he came back to Fort Wayne and he got a position just for a short time with Toyota, that would be in March of '04 -- 2004. But that really isn't too much of step one.

Step one is April of 2004. In April of 2004, on April 2nd you have Mr. Chapin starting as used car manager. Used car manager, new car manager, managerial persons above him.

At that point in time, the evidence will show, Mr. Kruse was acting -- Mr. Larry Kruse, gentleman in the courtroom, I was acting as kind of an interim or probationary manager over the Acura-Subaru dealership. Mr. Chapin is used car manager. Kurt Richards is general sales manager.

1        Then Mr. Nadeem Baig is brought into the system.  And he
2    is of Pakistani Muslim ethnicity and origin and religion.
3    You'll hear testimony that Mr. Chapin is a white, Baptist,
4    U.S.A. citizen, born in the United States.
5        In about the first week, Mr. Baig -- Nadeem Baig becomes
6    the, basically the general manager over Acura-Subaru in the
7    month of April of 2004.  And within a week or so, he
8    eliminates Kurt Richards and replaces him with Anwar Al-haq.
9    And the evidence will show, I believe, that he is Pakistani
10   Muslim also.
11       Then, as a couple of weeks progressed at the Acura-Subaru
12   dealership, there will be some evidence that there's kind of
13   rumors floating around that Mr. Chapin's going to be replaced
14   as used car manager, sales manager.
15       Mr. Baig calls a meeting of sales people and
16   managerial-type people at Acura Subaru right around April 28th
17   of 2004, and says, "Now, listen everybody here get it
18   straight.  Mr. Chapin is doing a fine job.  He's doing a good
19   job as used car manager.  He's not being replaced.  If I hear
20   anything about him being replaced, you're going to be fired or
21   terminated."  So two days later Mr. Baig terminates Mr.
22   Chapin, says, "You're terminated.  You're transferred.  Give
23   me your keys."  This was done in front of a couple of
24   witnesses of which you'll hear testimony from.
25       Okay.  Mr. Baig says, "Now, you see Mr. Kruse because you

1    might be able to transfer down to the Toyota Lexus dealership
2    that Mr. Kruse is in charge of.  So about June 1st -- now we
3    go the phase two.  That's phase one.  You're done with step
4    one or phase one.  This transfer or thing, the evidence of
5    step two or phase two.
6        Mr. Chapin then starts as used car manager with Kruse's
7    operation, the Toyota Lexus dealership, which is down the
8    road, and basically does not give Mr. Chapin any of the
9    resources he needs to be productive.  Mr. Chapin will testify
10   he started to get that used car dealer ramping up at
11   Acura-Subaru in the month of April.  Things were going to look
12   better in May and June because of what he had done.  Now he
13   has to start all over down at the Toyota Lexus and try and
14   ramp that up.  But they didn't give him the resources to ramp
15   it up.
16       Well, Mr. Chapin is saying this is not working.  I lost my
17   -- I was terminated because of Pakistani Muslim in the
18   Acura-Subaru.  Now I'm down here at the Toyota Lexus and that
19   just wasn't right.
20       On February 10th of 2005 -- now we're in phase two here --
21   Mr. Chapin files a charge of discrimination, which is a
22   requirement under Federal Law with the local
23   anti-discrimination agency here that works with the EEOC,
24   Equal Employment Opportunity Commission.  You got to do that
25   first.  He files it on February 10th, 2005.  But, of course,

1   then, they notify the Rohrman Group.  They notify Acura-Subaru
2   and, of course, then the Toyota Lexus, everybody knows about
3   it.  They have to file papers, they have to respond to this
4   charge of religious, national origin, race, discrimination
5   against Mr. Chapin, and Mr. Chapin has discussions on how to
6   protect himself, because he knows something bad is going to
7   happen while he's down at Toyota Lexus.
8       So he goes to a meeting on February 28th of '05 with Mr.
9   Kruse and two other representatives of the Bob Rohrman Group
10  assigned to the Toyota Lexus, and they have a discussion and
11  this discussion is taped.  There isn't going to be any doubt
12  as to whether or not you're going to listen to an audio tape.
13      Now, what you determine is on that tape and what is said
14  is up to you, as the Judge will instruct.  But there is
15  something more than he said/she said stuff going on here.  And
16  you listen to the tape and Mr. Chapin believes you will hear
17  on that tape, on February 20th, 2005, comments by Mr. Kruse
18  such as, "I need to ask you, what is your mentality in filing
19  an EEOC claim against Bob Rohrman?"  Mr. Kruse:  "What the
20  hell is your mentality?  Did you have a brain fart or what?"
21  And it goes on, Mr. Kruse:  "Do you want to work?
22      Mr. Chapin:  "Yes, I do."
23      And Mr. Kruse goes, "Well, if you wanted to work here on
24  the floor, I wouldn't file suit against him."
25      This goes on back and forth for a little while, it's not

very long, but it's pretty telling.  And Mr. Kruse -- Mr. Chapin believes Mr. Kruse stated to Mr. Chapin, he asked him, you need -- Mr. Kruse says, "Then you need to fucking reverse the claim right away.  It needs to be done today."  Believing that refers to the anti-discrimination claim pending in front of the anti-discrimination agency, known as the Human Relations Commission.  Mr. Kruse said further, "Go and do it right now.  You aren't going to work here until you get it reversed period."

Now that is what Mr. Chapin believes is stated in that tape.  And you will listen to the tape and you decide whether or not that's accurate or not.  But that goes to the retaliation claim.  Don't forget step one, discrimination on that.  Step two, retaliation, which is against the federal law also.  You can't tell a person, "You don't have a job unless you drop that discrimination claim over here then you're going to have a job."

So Mr. Chapin is deciding this is not working at Toyota Lexus.  And he's owed a check because they're paid in arrears.  And he goes to Mr. Kruse and says, "Well, I want my check, you know, for the month of February," because they get paid at the end of the month.  So on March 4th when he's asking for his check, well, the representatives of Toyota Lexus said, "No, you've got to come in and get your check."  Okay.  So he comes in and gets his check at the meeting on March 4th.  And there

1   are Mr. Larry Kruse again, on behalf of Toyota Lexus has
2   another discussion and Mr. Chapin knows things are really bad
3   now.  And so he tapes the conversation again.  And you will
4   hear that tape.
5       And at that point in time, Mr. Kruse is going, "I never
6   said that stuff to you.  Nah, nah, you're twisting things all
7   around.  I never told you you had to reverse that
8   discrimination charge or anything and you didn't have a job
9   here.  I told you I always wanted you back," basically.  But,
10  "Everything's fine.  I want you back.  I didn't say anything
11  about that."  You can listen to the tape it's a little longer
12  than the first tape, but you listen to it and you come to your
13  own conclusion.
14      But at the end of the day, phase two, step two is over at
15  that point in time because there is no way Mr. Chapin is going
16  to take away his first discrimination charge.  And now he goes
17  ahead and files a retaliation discrimination charge six days
18  later on March 10, 2005.  There's no way he can go back to the
19  Bob Rohrman Auto Group situation.
20      Now, you go to step three.  Step three is under the law,
21  if you find out that he has been unlawfully discriminated
22  against either by straight up intentional discrimination
23  because of race, national origin, so forth, or retaliation,
24  then you have to go to the damage issue.
25      You will be instructed on what you -- how you decide that

1  issue.  But the evidence will be Mr. Chapin now has no job.
2  He has -- the word spreads like wild fire amongst this
3  relatively tightly-knit car dealership, used and new.  He's
4  the guy with the tape.  I mean, we're not going to screw
5  around with Bob Rohrman.  He's the biggest in town.  We don't
6  want to get involved in litigation or anything.  Oh, no.  So
7  he's -- he's out of there.  He's persona non grata in the car
8  business in Allen County, Northeast Indiana, whatever the
9  testimony is.  But at the end of the day, you have to decide,
10 he will testify, he virtually lost his home to foreclosure.
11 He had no money to pay anything.  He had trouble with his two
12 boys that were living with him, and he had to have -- he
13 couldn't hardly buy them groceries half the time.  He had to
14 take menial jobs and try to make a buck here and a buck there
15 just to pay.  Despite that, he lost his home on repossession
16 or foreclosure.  He lost all of his personal property.  He
17 lost two vehicles.  He virtually was stripped down to nothing,
18 and was living in his car because he could not even afford
19 rent.  Now, that's step three.
20     He did eventually find a job, but he found a job out of
21 state in the car business.  So you've got step one, April,
22 '04, Acura-Subaru.  Step two, Toyota Lexus from about June 1st
23 of '04 to March 4th of '05.  And then you have the damages
24 that follow after that and that, in essence, is Mr. Chapin's
25 case.  And I hope you take the time to listen closely to both

1  sides of the story.  I invite you to listen to both sides.

2

3

4                            *   *   *

5              **CERTIFICATE OF THE COURT REPORTER**

6

7          This is to certify that the foregoing transcript

8  is a true and correct copy of the proceedings had, as taken

9  down by me and transcribed to the best of my ability.

10

11                          _____

                            **TINA GALLUCCI, RMR, CRR, FCRR**
12                          **U.S. District Court Reporter**